UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF WISCONSIN

---

In re

JAMES S. MICHALEK and
JUDITH M. MICHALEK,

        Debtors.

Case No. 06-23355

Chapter 13

---

MEMORANDUM DECISION ON CREDITOR'S MOTION
FOR ALLOWANCE OF ADMINISTRATIVE EXPENSE CLAIM

---

      This matter came before the court on Ford Motor Credit Company, LLC's motion for allowance of administrative expense claim. At a preliminary hearing, the court provided the parties with an opportunity to supplement the record, and both Ford and the trustee filed written memoranda in support of their positions. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B), and the court has jurisdiction under 28 U.S.C. § 1334. This decision constitutes the court's findings of facts and conclusions of law pursuant to Fed. R. Bankr. P. 7052.

## BACKGROUND

      The facts of the case are undisputed. On April 27, 2006, Ford leased to the debtors a 2006 Ford Fusion SE. The debtors filed a chapter 13 petition on June 22, 2006, and their plan was confirmed August 10, 2006. The confirmed plan provided for an assumption of the lease and direct lease payments to be made by the debtors. After the debtors defaulted under the terms of the lease and the automatic stay was lifted, the vehicle was repossessed by Ford and sold. According to Ford, the following amounts are due under the lease:

| | |
|---|---|
| Reconditioning: | $72.50 |
| Repo/Auction Fees: | $85.00 |
| Towing: | $110.00 |

| | |
|---|---|
| Repo/Outside Agent Fees: | $250.00 |
| Maintenance Fee: | $375.31 |
| Service Charges: | $1,979.48 |
| Termination Lease Balance: | $3,219.67 |
| Total: | $6,091.96 |

Ford has asserted the estate should pay the total amount due, $6,091.96, as an administrative claim.

## ARGUMENTS

Ford argues that once the debtors chose to assume the lease, damages flowing from the post-petition breach are entitled to administrative claim status under 11 U.S.C. § 503(b)(1)(A). A confirmed plan binds the debtors and their decision to assume the lease thereby obligates the estate on the lease in the event of their default. 11 U.S.C. §§ 365(g)(2), 1327(a). Courts have allowed section 503(a) administrative expense claims in similar situations in chapter 13 cases. *See, e.g., In re Wells*, 378 B.R. 557 (Bankr. S.D. Ohio 2007); *In re Masek*, 301 B.R. 336 (Bankr. D. Neb. 2003); *In re Wright*, 256 B.R. 858 (Bankr. W.D.N.C. 2001).

The trustee opposed the motion, citing the Sixth Circuit's recent decision denying administrative claim status to a lessor, reasoning that if the lessor wished to obtain additional relief against the debtors, it would have to be done outside the plan. *In re Parmenter*, 527 F.3d 606 (6th Cir. 2008).

## DISCUSSION

A Chapter 13 debtor may assume an unexpired lease pursuant to 11 U.S.C. §§ 365, 1322(b)(7). As noted by one court, once a debtor assumes an obligation, the payment may be made in one of three ways under 11 U.S.C. § 1322: (1) entirely from the property of the estate; (2) partially from the property of the estate and property of the debtor; or (3) entirely from the

2

property of the debtor.[1] *Ford Motor Credit Co. v. Benn*, 362 B.R. 1, 3 (E.D. Mich. 2007). Like the debtors in the *Benn* case, the debtors in this case agreed to make the payments themselves directly to Ford. *See id.* Moreover, in the *Benn* case and in the case at hand, it is undisputed that upon confirmation of the debtors' plan, the debtors' interests in the leased vehicles vested in the debtors and not the estates (Order Confirming Plan, dated August 10, 2006). *See id.* at 4.

Once a default occurs in an assumed lease, 11 U.S.C. § 365(g)(2)(A) controls the timing of the breach, i.e., whether the breach is deemed to arise pre- or post-petition. That section provides that if the "rejection," obviously used here to mean the default and end of the assumed contract, occurs in an unconverted case, the time of the rejection is the actual time of the breach. This is the time the breach matures into a claim. I say "obviously" because there is not an actual rejection, as that term is used in other parts of section 365, at the moment of default. The contract was assumed pursuant to the plan and order of confirmation, and "rejection," with the attendant notice and motion, is impossible at this point. Thus, the breach arises post-petition, and 11 U.S.C. § 502(g), relating to rejection damages for unassumed leases, does not apply.

Nevertheless, such a post-petition breach may give rise to an administrative claim under 11 U.S.C. § 503(b)(1)(A), which allows for payment of "the actual, necessary costs and expenses of preserving the estate." I am persuaded this is the only way a party contracting with the debtor

---

[1]The *Benn* court cited the following subsections of section 1322, in which the plan may:
(7) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section;
(8) provide for the payment of all or part of a claim against the debtor from property of the estate or property of the debtor;
(9) provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity.
11 U.S.C. § 1322(b).

3

can obtain administrative priority, or even a claim against the estate collectible from plan payments, because the bankruptcy code does not clearly indicate how damages for the breach of an assumed lease are treated.  Section 365(g)(2)(A) only tells us *when* the damages accrue, not how they are paid, if at all.  Unlike the court in *In re Wells*, 378 B.R. 557 (Bankr. S.D. Ohio 2007), however, I do not find support in the code for the proposition that a post-assumption breach automatically obligates the estate, or the plan, for damages from that breach.  The timing necessarily makes those damages a post-petition obligation, but that is all.  So the damages have to find an appropriate cubbyhole, or legal hook, if they are to be paid out of the estate.  In most cases the contract that is breached has, at least for a while, been of benefit to the estate, so an administrative expense claim is a good fit.

An administrative claim will be afforded priority under section 503(b) if the debt "both (1) arises from a transaction with the debtor-in-possession and (2) is beneficial to the debtor-in-possession in the operation of the business." *In re Jartran, Inc.*, 732 F.2d 584, 587 (7th Cir. 1984) (quotations omitted).  "Despite the potentially broad reach of § 503(b), 'administrative priority claims are to be strictly construed because the presumption in bankruptcy cases is that the debtor has limited resources that will be equally distributed to creditors.'" *In re SpecialtyChem Prods. Corp.*, 372 B.R. 434, 440 (E.D. Wis. 2007) (quoting *In re Nat'l Steel Corp.*, 316 B.R. 287, 299 (Bankr. N.D.Ill. 2004)).  The moving party bears the burden of showing, by a preponderance of the evidence, its claim is entitled to administrative expense priority. *Id*. (citations omitted).

The district court in *Benn* agreed with the bankruptcy court's conclusion that administrative expense claims for breached assumed auto leases were not warranted because there was no benefit to the estates (multiple cases with the same issue were consolidated for the

4

purpose of the decision). *Benn*, 362 B.R. at 4. The court so reasoned because each of the debtors' plans provided that, upon confirmation, the property vested in the debtors. Therefore, the leased vehicles ceased to be part of the debtors' estates upon confirmation, which was prior to the debtors' defaults on the leases. *Id*. The court further pointed out that the creditor failed to show that the debtors needed the leased vehicles to preserve their estates. *Id*. at 5.

The *Benn* case, which included the Parmenters among its several debtors' cases, was affirmed by the Sixth Circuit for slightly different reasons, including the *res judicata* effect of a confirmed plan, in *In re Parmenter*, 527 F.3d 606 (6th Cir. 2008). The court of appeals found the creditor was bound by the terms of the plan, wherein it was treated as a class three claimant, which had lower priority than administrative expenses. Granting the creditor's motion would impermissibly "allow the company to impose an obligation on the estate where none existed and indeed would give that claim the highest priority permitted." *Id*. at 609. This would allow Ford to jump ahead of other creditors in mid-case. Additionally, reclassification of the claim was not a permissible modification under 11 U.S.C. § 1329(a). *Id*.

The *Parmenter* court considered various cases which have allowed administrative expenses in similar circumstances, *see, e.g.*, *In re Wells*, 378 B.R. 557 (Bankr. S.D. Ohio 2007); *In re Masek*, 301 B.R. 336 (Bankr. D. Neb. 2003); *In re Hall*, 202 B.R. 929 (Bankr. W.D. Tenn. 1996); *In re Pearson*, 90 B.R. 638 (Bankr. D.N.J. 1988). Those courts adopted the reasoning of chapter 11 cases that have allowed administrative expenses when a debtor-in-possession assumes a lease and later defaults. The *Parmenter* court distinguished the rationale used in those cases, concluding that a chapter 11 debtor-in-possession acts on behalf of the estate when it assumes a lease and thus creates an legal obligation on the estate, but a chapter 13 debtor who assumes and

5

pays for a lease outside of the plan does not. 527 F.3d. at 610.

The dissenting opinion in the *Parmenter* case rejected the application of *res judicata* principles, noting the confirmed plan did not say one way or the other whether the creditor could receive administrative expenses for the debtors' default. The dissent noted that when a chapter 11 debtor-in-possession assumes an unexpired lease and later defaults on the lease payments, the court may treat the resulting deficiency as an administrative expense claim, and the same is true when a chapter 13 debtor assumes a lease and defaults. The dissent found no convincing reason for treating creditors dealing with a chapter 13 debtor differently from creditors dealing with a chapter 11 debtor-in-possession. *Id.* at 611. The dissent further noted Judge Lundin's treatise makes no distinction based on the identity of the disbursing agent. *Id*. at 613 (citing 4 Keith M. Lundin, *Chapter 13 Bankruptcy* § 296.1 (3d ed. 2000 & Supp. 2004)). The dissent read the plan as implicitly accepting the notion that assumed leases that are later breached trigger administrative expense claims and found no meaningful difference between payments "outside" and "inside" the plan. *Id*. at 614. All payments to creditors, either by the chapter 13 trustee or directly from debtors, are payments through, pursuant to, under, or inside the chapter 13 plan. In short, all payments are under the plan. *Id*. at 614-15. According to Ford's counsel, the *Parmenter* decision is currently being appealed.

I agree with the *Parmenter* dissent that principles of *res judicata* do not apply because breach or rejection damages are not addressed at the time of confirmation. Also, it makes no difference whether the lease payments are being made by the trustee or debtor-direct. They are still being paid pursuant to the plan. Likewise, I see no reason to apply different principles of liability for assumed lease defaults in ongoing chapter 11 and 13 cases; both are subject to

6

chapters 3 and 5 of the bankruptcy code, and both are forms of an ongoing case and reorganization. On the other hand, I do not believe the code supports *automatic* treatment of the lessor's claim as an administrative expense claim. No such provision is in sections 365, 502, 503, or anywhere else, and it is a post-petition claim timed by section 502(g)(1). So to obligate the estate, there must be benefit to the estate as required by section 503(b)(1)(A).

Here, both debtors were employed and had one other vehicle, along with the leased vehicle in question. Both cars, including the one that is the subject of this claim, would have allowed them to go to their separate jobs, to grocery stores, to medical appointments, and other activities that are part of everyday life. This is the sort of contract that benefits the reorganization of a chapter 13 debtor. That may not be true for all types of executory contracts that could be assumed by debtors (say, rental of a piano by someone who does not play professionally), but the use of an automobile is ubiquitous in this society and it is reasonable and necessary for the debtors to perform in this case. For this reason, I disagree with the district court in the *Benn* case, which found there was no benefit to the estate because the vehicles (actually, the leasehold interest in the vehicles) vested in the debtors upon confirmation, and payments were made directly by the debtor instead of by the trustee. I believe this is too narrow an interpretation of what benefits the estate. Almost anything that helps a chapter 13 debtor perform under a plan that makes payments to creditors is a benefit that gives rise to administrative claim status. I also find that the estate received a benefit regardless of where the property vested. This puts the focus on whether the lease helped the debtor perform under the plan, much as if the debtor contracted for a service rather than an asset.

This is not to say that every lease that benefits the debtor helps him or her perform under

a plan.  The above example of a rented piano used by a debtor who does not play professionally would probably not qualify as an administrative expense for this reason, notwithstanding that it makes the debtor happy and entertains friends and family.  A breach of the assumed piano lease would, therefore, be like any other debt that arises after the date of the petition, as 11 U.S.C. § 365(g)(2)(A) tells us this is the proper time for determining when the debt arises.

I am less concerned than the *Parmenter* majority that allowing the damages for breach of the car lease moves the claim ahead of others who will receive distributions from the confirmed plan.  Ford was to receive 100% of the amount due under the lease from the start.  The plan provided, and Schedule J disclosed, that lease payments were part of the debtors' expenses.  These expenses were taken into consideration when plan payments were proposed, so Ford at all times was to be paid its full contract amount before other claimants were paid.  This is consistent with the requirement of assuming any contract under section 365, and the funds available to other creditors would be the same as if the debtors had paid the lease amount, plus trustee's fees, to the trustee, who then disbursed the lease amount to Ford.

True, the debtors originally were paying Ford directly rather than through the trustee.  Allowing an administrative claim of the magnitude Ford has filed might make the plan unfeasible, as it now has to be paid out of trustee payments at 100%.  On the other hand, elimination of this expense might free up funds originally committed to the lease, some of which could then be paid into the plan. Or not.  A plan modification that would change distributions to creditors of lower priority would require notice and an opportunity for interested parties to inquire into whether the modification is necessary or to object.  Chapter 13 plans frequently must be changed when the debtors' circumstances change, and inability to continue lease payments is

8

but one of the possible events that debtors experience during a case that are not necessarily unfair to creditors.

For the reasons stated above, the trustee's objection is overruled as to the classification of Ford's claim as an administrative expense. The merits of the amount of the claim were not challenged at this stage of the proceedings, so the court takes no position on that matter. A separate order will be entered consistent with this decision.

August 19, 2008

                              Margaret Dee McGarity
                              Chief Judge, U.S. Bankruptcy Court